BISHOP, J.*
The defendant has appealed from the judgment imposed upon him following his conviction on the charge that, in violation of a provision of the Los Angeles Municipal Code, he had carried concealed upon his person a knife with a blade at least 3 inches in length. The knife, introduced into evidence, with a blade 3% inches in length, and characterized by the arresting officer as a produce knife, one used in working in vegetables, was said by the officer to have been found, folded up, in the defendant’s front pants pocket. The judgment must be affirmed if the provision is authorized under article XI, section 11 of the state Constitution. We have concluded that the provision is invalid because in conflict with a general law of this state, and as a consequence are reversing the judgment.
During the more than 80 years that section 11 has been a part of our Constitution, its wording has remained unaltered, but the meaning given it, with respect to the particular question at issue here, has undergone a great change. The section reads, simply: “Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws. ’ ’
The provision of the Municipal Code with which we are concerned consists of prohibitory language in its section 55.01, with a definition in section 55.05. Combined, they state, so far as of interest to us: “No person . . . shall wear or in *Supp. 779 any manner carry concealed upon his person ... any dirk or dagger; any knife with a blade three inches or more in length, and any snap-blade or spring-blade knife, regardless of the length of the blade. ’ ’ At this point we will not set forth the general law with which we find this to conflict, but shall first consider the cases that, up to a few years ago, gave us the meaning of " conflict ’ ’ as used in the section 11.
We begin by turning to some eases where the "field,” to employ the figure of speech so commonly in use in most all of the cases, is even narrower than in our case. In In re Hoffman (1909) 155 Cal. 114 [99 P. 517, 132 Am. St. Rep. 75], the local ordinance involved set a higher standard for milk than that expressly prescribed by the state law. The ordinance was held to be valid, the Supreme Court stating (155 Cal. at p. 117, 99 P. at p. 518): "it is well settled that the mere fact that the state in the exercise of the police power has made certain regulations, does not prohibit a municipality from exacting additional requirements.” A like conclusion was reached in Natural Milk Producers Assn. v. City & County of San Francisco (1942) 20 Cal.2d 101, 109-110 [124 P.2d 25, 30].
We quote from In re Iverson (1926) 199 Cal. 582, 586 [250 P. 681, 682], where a conflict was claimed to exist between a local ordinance and a provision of the state’s Wright Act, each putting a limitation upon the amount of intoxicating liquor that could be obtained upon a doctor’s prescription, the amount permitted by the ordinance being less than that allowed by state law: "The only way the legislature can inhibit local legislative bodies from enacting rules and police regulations is by the state itself occupying the same legislative field so completely that legislation on the subject by local legislative bodies will necessarily be inconsistent with the state act. ... Where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipality with subordinate power to act in the matter may make such new and additional regulations in aid and furtherance of the purposes of the general law as may seem fit and appropriate to the necessities of the particular locality and which are not in themselves unreasonable. ’ ’
A ease in which the "field” was a bit broader, one where the local ordinance was held to fill gaps left by the state law, and not just to be more severe with respect to a matter covered by that law, is In re Murphy (1900) 128 Cal. 29 [60 P. 465]. As to the portion of the field already occupied by state *Supp. 780 law the local ordinance was held to be ineffective, but as to other areas, those not specifically covered, it was held to be good. For a discussion of the case see In re Farrant (1960) 181 Cal.App.2d 231 [5 Cal.Rptr. 171, 173-174], See also: People v. Commons (1944) 64 Cal.App.2d Supp. 925 [148 P.2d 724], and People v. Jenkins (1962) 207 Cal.App.2d Supp. 904 [24 Cal.Rptr. 410] — where the municipal code sections now under examination were held valid as against the attack now made upon them; Sternall v. Strand (1946) 76 Cal.App.2d 432, 435 [172 P.2d 921, 922]; Remmer v. Municipal Court of San Francisco (1949) 90 Cal.App.2d 854, 856-857 [204 P.2d 92, 94]; and In re Farrant, supra, (1960) 181 Cal.App.2d 231, 236-237 [5 Cal.Rptr. 171, 174]; Daniel v. Board of Police Comrs. (1961) 190 Cal.App.2d 566, 570 [12 Cal.Rptr. 226], and cases reviewed.
If the cases which we have listed, together with those that they cite, were all that we had to guide us, we would hold without hesitation that a local ordinance, which covers an untouched spot in a field otherwise covered by state law, is not in conflict with the law, for that is what the eases hold. And so we would find section 55.01 to be valid, for that which it does is to declare it to be a public offense to carry concealed an article that is not prohibited by the general law.
In the statutes of the state we find The Dangerous Weapons’ Control Law, codified, in 1953, as sections 12000-12520 of the Penal Code, where it is made a felony for a person to possess a blackjack, slung shot, billy, sandclub, sandbag, or metal knuckles, or to carry concealed upon his person any dirk or dagger. Most of these articles are also declared to be nuisances. It is further made a misdemeanor for a person to carry any firearm concealed upon his person without a license. Many other provisions are a part of the act, but nowhere in it is a knife of any kind mentioned, unless a dirk or dagger may be said to be one of the members of the knife family. (See People v. Syed Shah (1949) 91 Cal.App.2d 716, 720 [205 P.2d 1081, 1083].)
In 1957 the field on which the municipal code at least casts its shadow, was further occupied by the Legislature, when it added section 653k to the Penal Code, declaring every person to be guilty of a misdemeanor who carried concealed upon his person a switchblade knife having a blade over 2 inches in length. In 1959 the word “concealed’’ was deleted, thereby occupying still more of the “field’’ on which our interest is centered.
*Supp. 781 Tested by the eases which, we find, established a principle that no longer is sound, we can now see that if there is any conflict between section 55.01 of the Los Angeles Municipal Code and any general law, it does not affect the outcome of this case. If a generic meaning is given to “knife” as used in the section, so that it covers “dirk,” “dagger” and “switch-blade knife,” the word still covers the instrument received in evidence in this case, which is a knife that is not a dirk, dagger or switch-blade, and the conviction would be good.
The principle, first thoroughly established, is no longer fashionable, however. While none of the cases that has been cited up to this point has been expressly overruled, they have become overruled by the later cases. As is stated in Fuji v. State of California (1952) 38 Cal.2d 718, 728 [242 P.2d 617, 624], quoted in In re Lane (1962) 58 Cal.2d 99, 105 [22 Cal.Rptr. 857, 860, 372 P.2d 897]: “... it is settled that the authority of an older case may be as effectively dissipated by a later trend of decision as by a statement expressly overruling it.” The rule now to be followed is that a local ordinance is in conflict with a general law not only if the general law fully occupies the field in which the local legislation attempts to enter, but also if the Legislature has intended to preempt the field, that is to keep the cities, and others, out of it.
The case of Abbott v. City of Los Angeles (1960) 53 Cal.2d 674 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385], is a good example of the prevailing rule. The plaintiff, who had been convicted of failure to remain in a Civilian Public Service Camp—a federal offense for which he served time— had failed to register as required by the provisions of the Los Angeles Municipal Code. His attempt to have the provision declared invalid as to him on the ground, among others, that it was in conflict with a general law was successful. Various approaches were taken to the conclusion, but among others we find this statement, the emphasis being that of the court itself (53 Cal.2d at p. 686; 3 Cal.Rptr. at p. 166): “Since 1947, and during periods of amendment, the Legislature had before it its own example of a criminal registration statute (Pen. Code, § 290), yet it refrained from applying the provisions of the latter to any but sex offenders. The latter section has been amended time and again, and although its terms have been extended to include more types of sex offenses, no *Supp. 782 other type of convicted person has been made subject to registration.”
In re Lane, supra, (1962) 58 Cal.2d 99 [22 Cal.Rptr. 857, 372 P.2d 897], has become the leading case in establishing that which we term the new rule. It suffices to quote two passages from the opinion in the case to see its import. They appear at page 104 of 58 Cal.2d and at page 860 of 22 Cal.Rptr.: “Although living in a state of cohabitation and adultery is prohibited (Pen.Code, §§ 269a, 269b) neither simple fornication or adultery alone nor living in a state of cohabitation and fornication has been made a crime in this state. (Rudell v. Board of Administration, 8 Cal.2d 600, 602 [2] [66 P.2d 1263]; In re Cooper, 162 Cal. 81, 83 et seq. [121 P. 318]; Ex parte Thomas, 103 Cal. 497 [37 P. 514]; White v. White, 82 Cal. 427, 449 [23 P. 276, 7 L.R.A. 799]; San Chez v. Superior Court, 153 Cal.App.2d 162, 165 [6] [314 P.2d 135].) It is therefore clear that the Legislature has determined by implication that such conduct shall not be criminal in this state. (Cf. Abbott v. City of Los Angeles, supra, 53 Cal.2d 674, 685.) ”
These eases follow the lead of In re Lane: In re Moss (1962) 58 Cal.2d 117 [23 Cal.Rptr. 361, 373 P.2d 425]; In re Loretizo (1963) 59 Cal.2d 445 [30 Cal.Rptr. 16, 380 P.2d 656]; In re Koehne (1963) 59 Cal.2d 646 [30 Cal.Rptr. 809, 381 P.2d 633]; In re Zorn (1963) 59 Cal.2d 650 [30 Cal.Rptr. 811, 381 P.2d 635]; and People v. Lopez (1963) 59 Cal.2d 653 [30 Cal.Rptr. 813, 381 P.2d 637].
Applying the principle of the cases just cited we conclude that the Legislature, having prohibited the carrying of dirks, daggers and switch-blade knives, has not only itself not forbidden one to carry the knife possessed by the defendant, but has shut off the power of the city to forbid it.
The judgment is reversed, with directions to dismiss the action.
Smith, J., concurred.
Hulls, Acting P. J., concurred in the judgment.

Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.