[Crim. No. 23269. Second Dist., Div. Two. July 13, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
ARNOLD JAY SOLOMON, Defendant and Respondent

**COUNSEL**

Roger Arnebergh, City Attorney and David Martin Schacter, Deputy City Attorney, for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, and Russell Iungerich, Deputy Attorney General, as Amici Curiae on behalf of Plaintiff and Appellant.

Robert N. Harris, Jr., Harris & Hoffman, Forrest S. Mosten and Jacoby & Meyers for Defendant and Respondent.

Richard S. Buckley, Public Defender, Harold E. Shabo, Ronald B. Davey, Deputy Public Defenders, A. L. Wirin, Fred Okrand and John D. O'Loughlin as Amici Curiae on behalf of Defendant and Respondent.

**OPINION**

**FLEMING, J.**—Arnold Solomon was charged in municipal court with a violation of Penal Code section 647, subdivision (e). That statute makes a person guilty of disorderly conduct: "Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification."

The trial court sustained Solomon's demurrer to the complaint and entered judgment dismissing the cause. The appellate department of the superior court reversed the judgment of dismissal and certified the cause to this court. We ordered the cause transferred here to reconsider the constitutionality of section 647, subdivision (e) in the light of United States Supreme Court decisions rendered subsequent to our decision in 1967 upholding the constitutionality of the statute. (*People* v. *Weger,* 251 Cal.App.2d 584 [59 Cal.Rptr. 661].)

I

Under specified circumstances section 647, subdivision (e) imposes a duty on a street loiterer to respond to a peace officer's inquiry, and in default of response the loiterer may be found guilty of the misdemeanor of disorderly conduct.[1] The essentials of section 647, subdivision (e) are three: (1) loitering on the streets, (2) refusal to identify and account on request, (3) in circumstances involving the public safety.

In *Weger,* likewise a ruling on demurrer, we held that the juxtaposition of these three elements provided a sufficient basis to support the duty to respond created by the statute. Since that decision a series of United States Supreme Court opinions has delineated the scope of police power in the streets and clarified its relationship to the law of search and seizure and the law of incrimination. We briefly review these developments.

1. *Temporary Detention.* In *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], the court upheld the validity of temporary detention as a form of street control and ruled that peace officers are authorized to stop and frisk persons on suspicion even though probable cause for arrest is lacking. Under appropriate circumstances, said the court, the governmental interest in effective crime prevention and detection justifies official intrusion into the constitutionally protected interests of private citizens. The test for determining the reasonableness of a particular intrusion involves a balancing of the government's need for intrusion against the invasion of private rights that the intrusion entails. "And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (392 U.S. at p. 21 [20 L.Ed.2d at p. 906].) ■ The decision in *Terry* has made it clear that when the surrounding circumstances reasonably indicate to a peace officer that the public safety demands that he stop and frisk a person on the streets, the officer is constitutionally entitled to do so.

2. *Self-incrimination.* In *Marchetti* v. *United States* (1968) 390 U.S. 39 [19 L.Ed.2d 889, 88 S.Ct. 697], and *Grosso* v. *United States* (1968)

---

[1]The disorderly conduct statute, in large part derived from fourteenth-century vagrancy laws that established crimes of status, was revised by the Legislature in 1961 to change disorderly conduct from a crime of status to one of conduct. The metamorphosis of section 647, subdivision (e) from a vagrancy statute into its present form may be followed in Arthur H. Sherry, *Vagrants, Rogues and Vagabonds—Old Concepts in Need of Revision* (1960) 48 California Law Review 557, and in 1959-1961 Report, California Assembly Interim Committee on Criminal Procedure, 22 Assembly Interim Committee Reports No. 1 (1961).

390 U.S. 62 [19 L.Ed.2d 906, 88 S.Ct. 709], the Supreme Court overturned as a violation of the privilege against self-incrimination the requirement that gamblers register for and pay a federal occupational tax. The court noted the illegality of gambling in most states and concluded that a requirement that gamblers register and pay a tax would compel them to incriminate themselves. The same reasoning was followed in *Haynes* v. *United States* (1968) 390 U.S. 85 [19 L.Ed.2d 923, 88 S.Ct. 722], where the court invalidated a law requiring registration of proscribed firearms, such as machine guns and sawed-off shotguns, and it was again followed in *Leary* v. *United States* (1969) 395 U.S. 6 [23 L.Ed. 2d 57, 89 S.Ct. 1532], where the court overturned Leary's conviction for failure to comply with provisions of a marijuana transfer tax because compliance and registration under the law would subject him to a high risk of incrimination.

In recent years the privilege against self-incrimination, historically a testimonial privilege that became operative when claimed,[2] has been extended to cover a variety of possible incriminating inquiries, testimonial and nontestimonial, and the requirement that the privilege must be claimed in order to come into effect has been watered down. Today, in some incriminating situations the mere posing of the inquiry may violate the privilege against self-incrimination and obviate the necessity for either reply or for claim of privilege.

3. *Duty to Furnish Information.* In *California* v. *Byers* (1971) 402 U.S. 424 [29 L.Ed.2d 9, 91 S.Ct. 1535], the Supreme Court upheld a California requirement that a driver involved in a vehicle accident give the owner of damaged property the name and address of the driver and that of the owner of the vehicle involved. Possible danger of self-incrimination as a consequence of furnishing identification, said the court, must yield to a civic duty to disclose required information, at least where the information is not essentially incriminatory. "[T]he mere possibility of incrimination is insufficient to defeat the strong policies in favor of a dis-

---

[2]This view was summarized in Justice Stewart's concurring opinion in *Leary* v. *United States* (1969) *supra*, 395 U.S. 6, at page 54 [23 L.Ed.2d 57, at page 92]: ". . . I have before now expressed my conviction that the Fifth Amendment guarantee against compulsory self-incrimination was originally intended to do no more than confer a testimonial privilege in a judicial proceeding. But the Court through the years has drifted far from that mooring; the *Marchetti* and *Grosso* cases are simply the most recent in a long line of decisions marking the extent of the drift. Perhaps some day the Court will consider a fundamental re-examination of its decisions in this area, in the light of the original constitutional meaning. Until that day comes, it seems to me that the authoritative weight of precedent permits no escape from the conclusion reached by the Court in this case." (Fns. omitted.)

closure called for by statutes like the one challenged here. . . . In order to invoke the privilege it is necessary to show that the compelled disclosures will themselves confront the claimant with 'substantial hazards of self-incrimination.' " (Pp. 428, 429 [29 L.Ed.2d pp. 17, 18].) Disclosure of the driver's identity is not evidence of a testimonial or communicative nature within the meaning of the Constitution, said the court, for a name does not implicate anyone in criminal conduct. The court cited with approval *United States* v. *Sullivan* (1927) 274 U.S. 259 [71 L.Ed. 1037, 475 S.Ct. 607, 51 A.L.R. 1020], where the failure of a bootlegger to file an income tax return was held not excused by the privilege against self-incrimination, an excuse whose acceptance Justice Holmes thought would amount to "an extreme if not an extravagant application of the Fifth Amendment." (Pp. 263-264 [71 L.Ed. pp. 1039-1040].)

4. *Invalidity of Traditional Vagrancy Statutes.* In *Papachristou* v. *City of Jacksonville* (1972) 405 U.S. 156 [31 L.Ed.2d 110, 92 S.Ct. 839], the Supreme Court found impermissibly vague a vagrancy ordinance whose language followed the historic pattern.[3] The law was void for vagueness, said the court, because it withheld fair notice of the particular conduct that was forbidden and because it encouraged arbitrary and erratic arrests and convictions.

In *Palmer* v. *City of Euclid* (1971) 402 U.S. 544 [29 L.Ed.2d 98, 91 S.Ct. 1563], the Supreme Court reversed a conviction under the City of Euclid's "suspicious person ordinance," which made it a crime for a "person who wanders about the streets or other public ways or who is found abroad at late or unusual hours in the night without any visible or lawful business . . . not [to] give satisfactory account of himself." The facts of the case were that "Palmer, in his car, was seen late at night in a parking lot. A female left his car and entered by the front door an adjoining apartment house. Palmer then pulled onto the street, parked with his lights on, and used a two-way radio. He was not armed. He said he had just let off a friend. He was then arrested. At the station he gave three different addresses for himself and said he did not know his friend's name or where

---

[3]The law defined as vagrants subject to misdemeanor charges: "Rogues and vagabonds, or dissolute persons who go about begging, common gamblers, persons who use juggling or unlawful games or plays, common drunkards, common night walkers, thieves, pilferers, or pickpockets, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places. common railers and brawlers, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, disorderly persons. persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses, or places where alcoholic beverages are sold or served. persons able to work but habitually living upon the earnings of their wives or minor children . . ."

she was going when she left his car." (402 U.S. p. 545 [29 L.Ed.2d p. 100].) The court found the ordinance, as applied to Palmer's conduct, unconstitutionally vague, in that it did not give him reasonable notice that what he did was unlawful.

## II

Section 647, subdivision (e) is attacked as vague, as incriminatory, and as arbitrary. We re-examine its validity in the light of the foregoing Supreme Court opinions.

1. *Vagueness.* The statute is asserted to be unconstitutionally vague. Yet under *Terry* v. *Ohio* (1968) *supra,* 392 U.S. 1, a peace officer is entitled to detain, frisk, and interrogate a person whose conduct raises a reasonable suspicion of criminal activity. The standard set out in *Terry* for the exercise of this authority is comparable to the one that brings section 647, subdivision (e) in play. Under *Terry* a peace officer is entitled to act when the information available to him warrants the belief by a man of reasonable caution that official intrusion is appropriate (pp. 20-21 [20 L.Ed.2d pp. 905-906]). Under section 647, subdivision (e) a peace officer is entitled to act when the surrounding circumstances indicate to a reasonable man that the public safety demands identification. We see no essential difference between these two formulations. Each amounts to what Justice Harlan has termed "articulable suspicion less than probable cause." (*Terry* v. *Ohio,* p. 31 [20 L.Ed.2d p. 912], concurring opinion.) Neither is subject to the infirmity of vagueness. Both justify the limited intrusion of temporary detention, followed in the one case by frisk and in the other by request for identification. (Parenthetically we observe that frisk involves greater intrusion into personality than does request for identification.)

Under section 647, subdivision (e) the person requested to identify himself is put on direct notice as to what constitutes the unlawful conduct, for before any violation of the statute can occur the request for identification must first be made. Nor does the statute lend itself to capricious enforcement, for it only becomes operative when "the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification." The surrounding circumstances must be within the knowledge of the peace officer (*People* v. *Bruno,* 211 Cal. App.2d Supp. 855, 862 [27 Cal.Rptr. 458]), and the reasonableness of the officer's belief in the threat to public safety is reviewable by an independent trier of fact.

Solomon argues that a peace officer's right to detain and ask questions

on less than probable cause for arrest (*Terry* v. *Ohio, supra,* 392 U.S. 1) does not give him a constitutional right to require that the questions be answered.[4] To the extent that the questions pertain to identification we disagree. The Legislature is accorded the broadest possible discretion in enacting penal statutes (*People* v. *Anderson,* 6 Cal.3d 628, 640 [100 Cal.Rptr. 152, 493 P.2d 880]), and the courts merely determine whether a statute reasonably relates to a legitimate government purpose. (*G & D Holland Construction Co.* v. *City of Marysville,* 12 Cal.App.3d 989, 994 [91 Cal.Rptr. 227].) One such purpose is prevention and detection of crime. ■ It is within the bounds of legislative power to proscribe conduct that interferes with prevention and detection of crime, where the proscription is consistent with constitutional rights. (Cf. Pen. Code, § 148, obstruction or delay of a public officer in the discharge of official duty; Pen. Code, § 834a, resistance to arrest; Veh. Code, § 2800, failure to obey a traffic officer, Veh. Code, § 12951, subd. (b) and § 40302, refusal to present driver's license or other satisfactory evidence of identification on demand of a peace officer.) We find that the legislative power employed here to compel identification is consistent with constitutional right.

2. ■ *Incrimination.* Section 647, subdivision (e) is also challenged as a violation of the privilege against self-incrimination. The principal issue on this point is whether in the light of the foregoing Supreme Court opinions the privilege against self-incrimination prohibits imposition on a suspected street loiterer of a duty to identify himself. In *California* v. *Byers* (1971) *supra,* 402 U.S. at pages 427-428 [29 L.Ed.2d at pages 16-17], the court spoke of "balancing the public need on the one hand, and the individual claim to constitutional protections on the other." With respect to the requirement of furnishing one's name and address the court said, at pages 431-432 [29 L.Ed.2d at page 19]: "Even if we were to view the statutory reporting requirement as incriminating in the traditional sense, in our view it would be the 'extravagant' extension of the privilege Justice Holmes warned against to hold that it is testimonial in the Fifth Amendment sense. . . . Disclosure of name and address is an essentially neutral act. Whatever the collateral consequences of disclosing name and address, the statutory purpose is to implement the state police power to regulate use of motor vehicles."

At bench, the public need involved, protection of society against crime,

---

[4]Cf. Justice White's concurring opinion in *Terry*: ". . . I think an additional word is in order concerning the matter of interrogation during an investigative stop. . . . the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation." (P. 34 [20 L.Ed.2d p. 913].)

is strong; while the individual right involved, anonymity when loitering on the streets under suspicious circumstances, is weak. We view the balance between identification and anonymity in the case of a loiterer on the streets under circumstances reasonably thought to involve the public safety as falling on the side of identification. Since the cause is here on demurrer we necessarily decide it on generalities, and the application of the statute to particular factual situations must await development, for, as the court observed in *Terry,* "[e]ach case of this sort will, of course, have to be decided on its own facts." (P. 30 [20 L.Ed.2d p. 911].) We reaffirm our view that the statute's requirement of identification does not conflict with the privilege against self-incrimination.

Section 647, subdivision (e), however, in addition to its requirement of *identification,* purports to require the suspected street loiterer to *account for his presence.* At the time we decided *Weger* we thought the duty placed on the suspected street loiterer to account for his presence did not conflict with the privilege against self-incrimination because the privilege is one that must be claimed, and until the privilege has been claimed it has not been violated. (8 Wigmore on Evidence (3d ed. 1961) § 2268, pp. 402-411.) In our former view only after the suspected street loiterer claimed the privilege did he become excused from the statutory duty to account for his presence. Since then, however, the Supreme Court has ruled that the mere posing of questions in certain situations, as in the gambling, firearms, and marijuana tax cases, may intrude upon the privilege and render superfluous any need to claim the privilege. Of some tangential relevance is the requirement that a suspect be advised by his interrogator in advance of questioning about his privilege against self-incrimination and his right not to answer questions (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and related cases). While *Miranda* advice is technically required only when cause for arrest appears, nevertheless, *Miranda* has received an expansive interpretation (cf. *Orozco* v. *Texas* (1969) 394 U.S. 324 [22 L.Ed.2d 311, 89 S.Ct. 1095]), and the current flows in the direction of excusing a person from furnishing any information to the authorities when he is suspected of wrongdoing. Since the existence of suspicious circumstances is a prerequisite to the applicability of section 647, subdivision (e), a duty placed on a suspected street loiterer to account for his presence may conflict with the privilege against self-incrimination of the Fifth Amendment.

In view of these constitutional developments we now construe section 647, subdivision (e) on a narrower basis than we did in our former opinion. Because we believe the aim of the statute is to require *identification* when the surrounding circumstances involve the public safety, we con-

strue the requirement of *identification* as primary and controlling, and we interpret the requirement *account for his presence* as wholly subordinate and adjunct to the requirement of identification, as operative only to the extent it assists in producing credible and reliable identification, for under current constitutional doctrine to require more might impinge upon the privilege against self-incrimination.

The literal text of section 647, subdivision (e) lends support to this construction. In describing the conditions under which the law becomes operative the statute refers to surrounding circumstances that suggest the public safety demands identification—not that it demands identification and accounting. Additionally, the statute defines the crime of disorderly conduct as refusal to identify *and* account for presence, thus implying that conjunctive refusals are necessary in order to establish a violation of the statute. We construe these requirements as essentially unitary, and hold that section 647, subdivision (e) is fully satisfied by the production of reliable identification. On this point we conclude with the observation that duty to identify comprehends a genuine identification, one carrying reasonable assurance that the identification is authentic and providing means for later getting in touch with the person who has identified himself. On this aspect of identification, accounting for presence may continue to play an ancillary role of importance.

3. *Arbitrariness.* Finally, it is claimed that section 647, subdivision (e) is invalid because it is susceptible to arbitrary enforcement.

It bears repetition that we are not dealing with the typical vagrancy statute that makes status a crime but with one that makes conduct a crime. The statute contains three elements: (1) refusal to furnish identity (2) by one loitering on the streets (3) under circumstances that infringe upon the public safety. Proof of each element is essential in order to establish a violation of the statute. In contrast, the ordinance in *Papachristou* v. *City of Jacksonville, supra,* 405 U.S. 156, created a crime whose sole element consisted of loitering on the streets, and the ordinance in *Palmer* v. *City of Euclid, supra,* 402 U.S. 544, while more comprehensive than the *Jacksonville* ordinance in that it contained the element of refusal to account as well as the element of loitering, was susceptible to arbitrary administration in that it lacked standards for its application. The California statute comes into operation only when surrounding circumstances suggest to a reasonable man some impairment of the public safety, and, as the court observed in *Terry,* such circumstances can be objectively defined and articulated. In our view the presence in the stat-

ute of this third element furnishes sufficient protection against arbitrary enforcement to make the statute constitutional.

Since we have construed duty to *account for his presence* as subordinate and adjunct to duty to furnish *identification,* questions involving the satisfactoriness of the account given a peace officer by a suspected street loiterer and questions involving the standards a peace officer must use in evaluating the account given to him do not arise. Once a person has furnished suitable *identification* he has satisfied the statute, and he may not be arrested or prosecuted for failure to *account for his presence* or failure to give a satisfactory or even plausible account to the interrogating peace officer.

As construed section 647, subdivision (e) withstands constitutional challenge. The judgment of the municipal court dismissing the complaint is reversed.

Roth, P. J., and Compton, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 11, 1973. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.