[Civ. No. 36350. First Dist., Div. Three. Oct. 21, 1975.]

EDDY YUEN, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE SAN FRANCISCO
JUDICIAL DISTRICT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

352

COUNSEL

John J. Ferdon, District Attorney, and Philip L. Strauss, Assistant District Attorney, for Real Party in Interest and Appellant.

Richard A. Hodge and Joseph L. Matthews for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

**SCOTT, J.**—Eddy Yuen was charged with a violation of section 1291(b) of the Municipal Police Code of the City and County of San Francisco. Yuen's demurrer to the complaint was overruled. The superior court granted his petition for writ of prohibition permanently restraining the municipal court from taking any further action against him. The basis for the order was that the subject matter covered by the ordinance had been preempted by state law. The People, who are the real party in interest, appeal.

I. The People first contend that the subject matter of the ordinance has not been preempted by state law as to either loitering or weapons control such that the ordinance is not unconstitutional under section 7, article XI of the California Constitution.[1]

The ordinance provides as follows:

"SEC. 1291. Prohibiting Loitering While Carrying Concealed Weapons. (a) As used in this section, but in no wise limited thereto, 'dangerous or deadly weapon' shall mean: Any knife with a blade three inches or more in length; any spring-blade, switch-blade, or snap-blade knife or other similar type knife; any knife any blade of which is automatically released by a spring mechanism or other mechanical device; any ice pick, or similar sharp, stabbing tool; any straight edge razor or any razor blade fitted to a handle; any cutting, stabbing, bludgeoning weapon or device capable of inflicting grievous bodily harm.

---

[1]Section 7, article XI of the California Constitution provides: "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

"(b) It shall be unlawful for any person, while carrying concealed upon his person any dangerous or deadly weapon, to loaf or loiter upon any public street, sidewalk, or alley, or to wander about from place to place, with no lawful business thereby to perform, or to hide, lurk, or loiter upon or about the premises of another.

"(c) It shall be unlawful for any person who has concealed upon his person or who has in his immediate physical possession any dangerous or deadly weapon to engage in any fight or to participate in any other rough or disorderly conduct upon any public place or way or upon the premises of another.

"(d) It shall be unlawful for any person who has concealed upon his person any dangerous or deadly weapon to loiter about any place where intoxicating liquors are sold or any other place of public resort.

"(e) The foregoing restrictions shall not be deemed to prohibit the carrying of ordinary tools or equipment carried in good faith for uses of honest work, trade or business or for the purpose of legitimate recreation."

■ There are three tests to determine whether a subject has been preempted by the Legislature: 1) whether the subject matter has been so fully and completely covered by general law as to indicate that it has become exclusively a matter of state concern; 2) whether the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or 3) whether the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality. (*In re Hubbard* (1964) 62 Cal.2d 119, 128 [41 Cal.Rptr. 393, 396 P.2d 809], overruled on other grounds in *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 63 [81 Cal.Rptr. 465, 460 P.2d 137]; *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 859-860 [76 Cal.Rptr. 642, 452 P.2d 930].)

■ A local municipal ordinance is invalid if it attempts to impose additional requirements in a field that is preempted by the general law. (*In re Moss* (1962) 58 Cal.2d 117, 118 [23 Cal.Rptr. 361, 373 P.2d 425]; cf. *Crownover* v. *Musick* (1973) 9 Cal.3d 405, 416 [107 Cal.Rptr. 681, 509 P.2d 497]; *Younger* v. *Berkeley City Council* (1975) 45 Cal.App.3d 825, 830 [119 Cal.Rptr. 830].)

A. In *Gleason* v. *Municipal Court* (1964) 226 Cal.App.2d 584 [38 Cal.Rptr. 226], the court found that a Los Angeles loitering statute was not preempted by the state vagrancy statute, Penal Code section 647. There the proscribed loitering was in tunnels, subways, and in general, freeway areas. The court stated, at page 586: "It is evident that the Legislature did not intend to occupy the entire field of loitering and preclude local legislation thereon." Penal Code section 647 is limited by its terms and applications. It makes no mention of loitering while carrying concealed, dangerous or deadly weapons.

The San Francisco ordinance, as the Los Angeles ordinance in *Gleason,* "supplements the state legislation in a field which we consider the Legislature did not intend to preempt." (226 Cal.App.2d at pp. 587-588.)

In *In re Hoffman* (1967) 67 Cal.2d 845 [64 Cal.Rptr. 97, 434 P.2d 353], the court found constitutional, in part, another Los Angeles Municipal Code prohibiting loafing or loitering about a train depot. Although preemption was not an issue discussed in that opinion, *Gleason* was cited with approval at page 853, where the court stated: "As so interpreted the first part of the ordinance is a justified police measure that protects the city's interest in assuring public safety (cf. *Gleason* v. *Municipal Court* (1964) 226 Cal.App.2d 584, 587 [38 Cal.Rptr. 226]) without interfering with the legitimate exercise of any constitutionally protected activity."

Yuen relies on *In re Moss, supra,* 58 Cal.2d 117 and *In re Koehne* (1963) 59 Cal.2d 646 [30 Cal.Rptr. 809, 381 P.2d 633] in support of his position that state law has preempted local ordinances purporting to control so-called "loitering" or "vagrancy." As Yuen asserts, the California Supreme Court has held preempted certain local ordinances which dealt with various aspects covered by the general law. *In re Moss* held invalid a local ordinance covering indecent shows, upon its conclusion that the state had adopted a general scheme for the regulation of the criminal aspects of sexual activity and determined, to the exclusion of local regulation, what acts of exposure and exhibition shall be criminal. *In re Koehne* held invalid a local ordinance covering public intoxication upon its conclusion that the state had adopted a general scheme for the regulation of the criminal aspects of being intoxicated in a public place (59 Cal.2d at p. 648).

Despite Yuen's assertion that these cases dealt with "vagrancy in the form of intoxication" or "vagrancy in the context of lewd or lascivious

purposes or behavior," it is clear that the court was not dealing with vagrancy statutes as such, but rather, was dealing with specifically drawn statutes aimed at the subjects which the court held were preempted by the general law.

■ In applying the three *Hubbard* tests, we conclude that the San Francisco ordinance is not preempted by the general state law concerning loitering or vagrancy.

B. We next examine whether the Legislature has preempted the control of knives and knife-like objects as dangerous or deadly weapons.

Yuen refers us to Penal Code sections 653k, 3024, subdivision (f), and 12020[2] and urges that the combination of these sections covers virtually every knife-like object proscribed by the ordinance in question. The People correctly urge, however, that these state statutes in fact cover limited kinds of knives. (See *People* v. *Forrest* (1967) 67 Cal.2d 478, 480 [62 Cal.Rptr. 766, 432 P.2d 374]; *People* v. *Bain* (1971) 5 Cal.3d 839, 850 [97 Cal.Rptr. 684, 489 P.2d 564].)

Therefore, turning to the first test of *Hubbard* (62 Cal.2d at p. 128), it is clear that the Legislature, by these three sections, has not "fully and

---

[2]Penal Code section 653k provides:

"Every person who carries upon his person, and every person who sells, offers for sale, exposes for sale, loans, transfers, or gives to any other person a switch-blade knife having a blade over two inches in length is guilty of a misdemeanor.

"For the purposes of this section 'a 'switch-blade knife' is a knife having the appearance of a pocketknife, and shall include a spring-blade knife, snap-blade knife, gravity knife or any other similar type knife; the blade or blades of which are two or more inches long and which can be released automatically by a flick of a button, pressure on the handle, flip of the wrist or other mechanical device, or is released by the weight of the blade or by any type of mechanism whatsoever."

Penal Code section 3024, subdivision (f) provides:

"(f) The words 'deadly weapon' as used in this section are hereby defined to include any instrument or weapon of the kind commonly known as a blackjack, slung shot, billy, sandclub, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than five inches, any razor with an unguarded blade and any metal pipe or bar used or intended to be used as a club."

Penal Code section 12020 provides:

"Any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, sawed-off shotgun, or metal knuckles, or who carries concealed upon his person any explosive substance, other than fixed ammunition or who carries concealed upon his person any dirk or dagger, is guilty of a felony, and upon conviction shall be punishable by imprisonment in the county jail not exceeding one year or in a state prison for not less than one year nor more than five years."

completely" covered the proscriptions against knives so as to indicate that it has become exclusively a matter of state concern. By comparison, see *Galvan* v. *Superior Court, supra,* which held a local gun registration ordinance not preempted by state statutes where they cite a proliferation of legislation covering gun control. (70 Cal.2d at pp. 861-862, fn. 4.) Nor does state legislation appear to partially cover the field so as to indicate clearly that a paramount state concern will not tolerate further or additional local action. Here, in addition to carrying the proscribed weapon, it must be concealed, which is not a requirement of all the state statutes referred to, and further, the carrier must be loitering, loafing or wandering about from place to place with no lawful business, or hiding or lurking about the premises of another.

As in *Galvan* (at p. 863), there is no relevant statute which expressly states that the concealed carrying of dangerous or deadly weapons is exclusively a matter of state concern. Nor do we find that there is a reasonable implication of such legislative intent that a paramount state concern will not permit further local regulation.

Turning to the third *Hubbard* test, no adverse effect upon transient state citizens appears to outweigh the possible benefit to the municipality. Clearly, nonresidents who pass through San Francisco will not be confronted by a peculiar prohibition, unless of course they are disposed to loiter for a sinister or wrongful purpose[3] while carrying, concealed, a dangerous or deadly weapon. If they are so disposed, the municipality has a legitimate interest in proscribing such conduct by transient and citizen alike.

Yuen's reliance upon *People* v. *Bass* (1963) 225 Cal.App.2d Supp. 777 [33 Cal.Rptr. 365] is misplaced. There the Appellate Department of the Los Angeles Superior Court did hold unconstitutional as having been preempted, a local ordinance making it unlawful to carry, concealed, any dirk, dagger, knife with a blade three inches or more in length, and any snap-blade or spring-blade knife. The Supreme Court in *Galvan,* in discussing the constitutionality of a local gun registration ordinance, referred to *Bass* in a footnote: "Thus, that the state has preempted the field of knife-like weapons (*People* v. *Bass,* 225 Cal.App.2d Supp. 777, 782 [33 Cal.Rptr. 365]) does not determine either whether the state has preempted all aspects of weapons control, or the relevant field of firearms registration." (70 Cal.2d at p. 862, fn. 5.) We do not view this

---

[3]As stated in *In re Hoffman, supra,* the phrase "loaf or loiter" is construed to bear a "sinister or wrongful" implication. (67 Cal.2d at p. 853.)

dictum as adopting the *Bass* holding, but merely as an illustration that the preemption of one field of weapons does not determine that all aspects of weapons control has been preempted. In any event, the Los Angeles ordinance considered in *Bass* is clearly distinguishable from the one here, in that the additional elements of loitering or wandering about with no lawful business were not present.

■  The ordinance is not preempted by the general law concerning the control of knives or knife-like weapons.

II.  ■  Lastly, we consider whether this ordinance is unconstitutionally vague and overbroad.

Initially, we observe that some so-called "vagrancy" statutes have been held to be unconstitutional where the statute "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." (*Papachristou* v. *City of Jacksonville* (1972) 405 U.S. 156, 162 [31 L.Ed.2d 110, 115, 92 S.Ct. 839], quoting *United States* v. *Harriss* (1954) 347 U.S. 612, 617 [98 L.Ed. 989, 996, 74 S.Ct. 808].) Here, however, in addition to loitering, the proscribed conduct requires that the person be carrying, concealed on his person, a dangerous or deadly weapon. In *People* v. *Solomon* (1973) 33 Cal.App.3d 429 [108 Cal.Rptr. 867], certiorari denied, 415 U.S. 951 [39 L.Ed.2d 567, 94 S.Ct. 1476], the court found that Penal Code section 647, subdivision (e)[4] was constitutional in light of *Papachristou,* in that the additional requirement that a person identify himself was direct notice as to what constitutes the unlawful conduct.

Here, the carrying of the concealed weapon is a sufficient additional requirement to give notice as to what constitutes the unlawful conduct. The term "dangerous or deadly weapon" has a precise meaning. A partial list of such objects is in fact set forth in section 1291(a) of the ordinance itself. The ordinance therefore is constitutional by the standards of *Papachristou, supra.*

---

[4] Penal Code section 647 provides, in part:
"Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:

"(e) Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification."

Yuen urges that other language in ordinance 1291 makes it vague and overbroad, and therefore unconstitutional. He cites as inadequate the language "to wander about from place to place, with no lawful business." This language is similar to that of Penal Code section 647, subdivision (e), which was approved in *People* v. *Solomon, supra.*

Subdivision (e) is not vague or uncertain. It is clearly a question of fact to determine if the person is carrying, in good faith, ordinary tools or equipment for use in honest work, trade or business, or for the purpose of legitimate recreation. Although the language may be somewhat Victorian, a reasonable person could not misunderstand its meaning.

Judgment is reversed. The cause is remanded with directions that the writ of prohibition be denied and that the criminal proceedings in the municipal court be ordered reinstated.

Brown (H. C.), J., concurred.

**DRAPER, P. J.**—I concur in the judgment, although with some misgivings. Under the broad language of the ordinance, one carrying an ordinary pocketknife while sitting on a bench awaiting a bus could conceivably be charged and convicted. The ordinance seems to me to be saved only by construing the phrase "loaf or loiter" as bearing a "sinister or wrongful" implication (*In re Hoffman,* 67 Cal.2d 845, 853 [64 Cal.Rptr. 97, 434 P.2d 353]).

The petition of the plaintiff and respondent for a hearing by the Supreme Court was denied December 30, 1975. Mosk, J., and Sullivan, J., were of the opinion that the petition should be granted.