174 Cal.App.3d 1199 (1985)
220 Cal. Rptr. 368
THE PEOPLE, Plaintiff and Appellant,
v.
ROMAN ALBERTO GERARDO, Defendant and Respondent.
Docket No. 22323.
Court of Appeals of California, Appellate Department, Superior Court, Los Angeles.
August 19, 1985.
COUNSEL
Ira Reiner, District Attorney, Donald J. Kaplan and Richard Sullivan, Deputy District Attorneys, for Plaintiff and Appellant.
Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Henry Barela and John Hamilton Scott, Deputy Public Defenders, for Defendant and Respondent.
OPINION
BERNSTEIN, J.
Defendant Roman Alberto Gerardo was charged in a misdemeanor complaint with a violation of section 9.16.053 of the City of Page Supp. 4 Commerce Municipal Code (hereafter section 9.16.053), which prohibits the carrying of knives or dirks in plain view.[1] Specifically, Los Angeles County Sheriff Department complaint report, No. 184-07639-0242-152, alleges that two sheriff's deputies were patrolling Whittier Boulevard on a crowded and dangerous "cruise night" on May 28, 1984, at 1:10 a.m. The deputies saw defendant, a member of the El Sereno gang, wearing a hunting knife with a six-inch blade on his belt.
On July 19, 1984, defendant filed a written demurrer to the complaint on the ground that the latter failed to allege a public offense. (Pen. Code, § 1004, subd. 4.) Defendant took the position that section 9.16.053 is invalid for the dual reasons that its proscription against carrying knives or dirks in plain view is in direct conflict with state law and that the state has impliedly preempted the field of knife, dirk, and dagger regulation.
With regard to his first reason, defendant pointed out that in enacting Penal Code section 12020, which proscribes the carrying of any dirk or dagger upon the person, inter alia, the Legislature expressly exempted "[k]nives carried in sheaths which are worn openly suspended from the waist of the wearer" from being considered to be "concealed within the meaning of this section." (Pen. Code, § 12020, subd. (e).) Defendant also pointed out that "knives which are carried openly in sheaths suspended from the waist of the wearer" are likewise excluded from the proscription in Penal Code section 12025 against the carrying of a weapon concealed within a vehicle or upon the person of someone who has no license to carry it. (Pen. Code, § 12025, subd. (c).)
With regard to the second reason, defendant argued that since the Legislature has formulated a broad and comprehensive scheme of regulating the possession and carrying of dangerous weapons, including dirks and daggers, the Legislature clearly intended to preempt the field and thus preclude local Page Supp. 5 regulation of such matters, such as section 9.16.053. In support, defendant referred to the fact that "Title 2 of Part 4 of the Penal Code, in which the Legislature's prohibition [against] concealed possession of dirks and daggers is found (Pen. Code, § 12020, subd. (a)), is not merely concerned with knives, but is entitled `The Dangerous Weapons Control Law' (Pen. Code, § 12000)." In particular, he referred to the provisions in that part which regulate "the manufacture, sale and possession of blackjacks, metal knuckles, explosives, sawed-off shotguns, dirks and daggers (Pen. Code, § [§] 12020, 12025), the carrying of loaded weapons (Pen. Code, § 12031), and the licensing and sale of concealed weapons (Pen. Code, §[§] 12050-12079)."
On August 16, 1984, a hearing was held on the demurrer. The People argued that section 9.16.053, which proscribes the carrying of knives or dirks in plain view, does not conflict with Penal Code section 12020 since the latter only covers concealed weapons. In support they cited the court to Yuen v. Municipal Court (1975) 52 Cal. App.3d 351 [125 Cal. Rptr. 87]. The defense reiterated their arguments on state preemption and conflict with state law. The defense also argued that defendant had a constitutional right "to bear arms," and thus section 9.16.053 was an abridgment of that right. The People then argued that no state preemption was involved since the state Legislature did not address itself to the regulation of unconcealed knives.
In sustaining the demurrer the court expressly found "that based on defense's written motion and oral arguments ... [the] [S]tate has pre-empted [the] field dealing with dangerous weapons, so the ordinance [is] in conflict with [s]tate [l]aw." The court then dismissed the case on its own motion.
On appeal the People assert that the court erred in sustaining the demurrer. We agree and reverse.
(1) Initially, we must preface our discussion of the matters raised in defendant's demurrer by acknowledging that the ordinance in question is invalid to the extent that it defines "knives and daggers" to include "any spring-blade, switch-blade or snap-blade knife; any locking-blade knife; any knife any blade of which is automatically released by a spring mechanism or other mechanical device." (City of Commerce Mun. Code, § 9.16.051.)
Article XI, section 7 of the California Constitution provides, "A county or city may make and enforce within its limits all local, police, sanitary and other ordinances and regulations not in conflict with general laws."
From our review of Penal Code section 653k and its legislative history we conclude that the Legislature intended to except these particular types Page Supp. 6 of knives from local regulation, and thus the City of Commerce ordinance's attempt to proscribe such knives directly conflicts with state law covering the same subject matter.
When enacted in 1957, Penal Code section 653k declared it to be a misdemeanor for anyone to carry concealed upon his person a switch-blade knife having a blade over two inches in length. However, in 1959, the Legislature caused the word "concealed" to be deleted, thus expressing its intent to proscribe such switch-blades whether they were concealed or in plain view. Subsequently, that section was again amended to broaden further the kinds of knives the Legislature intended to fall within the scope of section 653k, which, as amended in 1981, and as it currently stands, provides: "Every person who carries upon his person, and every person who sells, offers for sale, exposes for sale, loans, transfers, or gives to any other person a switch-blade knife having a blade over two inches in length is guilty of a misdemeanor. [¶] For the purposes of this section a `switchblade knife' is a knife having the appearance of a pocketknife, and shall include a spring-blade knife, snapblade knife, gravity knife or any other similar type knife, the blade or blades of which are two or more inches long and which can be released automatically by a flick of a button, pressure on the handle, flip of the wrist or other mechanical device, or is released by the weight of the blade or by any type of mechanism whatsoever."
This invalidity, however, is of no avail to defendant. He was not charged with carrying or wearing a "switch-blade" or similar type of knife. We find this invalid portion to be severable from the remainder of the ordinance.
(2) "It is a general rule supported by an unbroken line of decisions that a provision in, or a part of, an act may be unconstitutional without invalidating the entire act. The accepted doctrine in such case is that the constitutional portions of a statute may stand alone and remain in force, if they can be separated from the portions that are void. In other words, the valid portions of a statute will be upheld if they are severable from the invalid portions and constitute a completely operative expression of the legislative intent....
"The constitutional and unconstitutional provisions of a statute may be included in one and the same section and yet be severable. Also, statutes may be unconstitutional and void as to their application to a part of the subject matter and valid as to other parts; legislation may also be constitutional in operation with respect to some persons and states of fact and unconstitutional as to others. Page Supp. 7
".... .... .... .... .... .... .
"The rules as to partial unconstitutionality apply with the same force to county and city ordinances and city charters as to legislative acts generally.
"A court will not consider the asserted unconstitutionality of portions of an act that do not affect the rights of the party raising the question, where such portions, if unconstitutional, would fall without affecting the validity of the remainder of the statute." (13 Cal.Jur.3d, Constitutional Law, § 84, pp. 152-153, fns. omitted.)
(3) Having thus disposed of these preliminary matters, we turn now to the validity of the City of Commerce Municipal Code's proscription against the carrying of knives or daggers in plain view on the person in the context of defendant's demurrer and the complaint against him.
We find no merit in defendant's contention that section 9.16.053 conflicts with state law. Penal Code sections 12020 and 12025 only prohibit the carrying of concealed dirks and daggers and expressly exclude from their purview "knives which are carried or worn openly suspended in sheaths from the waist of the wearer." It is therefore abundantly clear that section 9.16.053's proscription is entirely different from and in no way touches upon the proscriptions covered by those Penal Code sections.
(4a) From our analysis, post, we conclude that defendant's remaining ground is also without merit. Local regulation of knives, dirks, or daggers carried or worn in plain view has not been precluded by virtue of state preemption of the field. Accordingly, section 9.16.053 is not invalid as a usurpation of the state's prerogative in that area.
In reaching this latter conclusion we are not unmindful of our earlier decision in People v. Bass (1963) 225 Cal. App.2d Supp. 777 [33 Cal. Rptr. 365], or the fact that the Bass decision was mentioned in footnote 5 in Galvan v. Superior Court (1969) 70 Cal.2d 851, 862 [76 Cal. Rptr. 642, 452 P.2d 930] as holding: "the state has preempted the field of knife-like weapons."
In Bass, 225 Cal. App.2d Supp. 777, the defendant was prosecuted for carrying a concealed knife with a blade at least three inches long. The local ordinance in that case purported to prohibit the wearing or carrying of any dirk or dagger, or any knife with a blade three inches or more in length, inter alia, concealed upon the person. (Pp. 778-779.) We invalidated the ordinance on state preemption grounds after finding that "the Legislature has determined by implication that such conduct shall not be criminal in this Page Supp. 8 state." (P. 782.) We reasoned that the Legislature intended to preempt the field based on its enactment of the "Dangerous Weapons' Control Law" (Pen. Code, §§ 12000-12520) and Penal Code section 653k, which prohibits the carrying of a switch-blade knife having a blade over two inches in length concealed upon the person. We concluded that: "[T]he Legislature, having prohibited the carrying of dirks, daggers, and switchblade knives, has not only itself forbidden one to carry the knife possessed by defendant, but has shut off the power of the city to forbid it." (Ibid.)
In Bass we relied upon In re Lane (1962) 58 Cal.2d 99 [22 Cal. Rptr. 857, 372 P.2d 897] wherein a local ordinance, making sexual intercourse between unmarried people a crime, was declared invalid because the field of what constituted a sexual offense was preempted by the general laws. Lane, in supporting its opinion, cited approximately a page and one-half of cases dealing with sexual offenses. The exhaustive enumeration of sexual offenses by the Legislature led the Lane court to hold that by implication the conduct proscribed by the county ordinance was not to be considered criminal. It was preemption by implication and the Bass court interpreted the Lane holding to mean that anything not specifically denominated as illegal by the Legislature was therefore legal notwithstanding any county ordinance to the contrary. Bass is an example of the doctrine of preemption by implication gone wild, for when it comes to the open possession of knives, the Legislature continues to be almost completely silent.
Penal Code section 12000 et seq., otherwise known as the Dangerous Weapons Control Law, never mentions a knife. Penal Code section 12020 does prohibit the concealed carrying of any "dirk or dagger." The total failure of the Legislature to address itself to the problem of knives as weapons has resulted in a whole line of cases wherein the courts were compelled to call ordinary kitchen knives and carving knives, and other knife-like weapons capable of inflicting mortal wounds, "dirks and daggers." People v. Ferguson (1970) 7 Cal. App.3d 13, 19-20 [86 Cal. Rptr. 383]; People v. Forrest (1967) 67 Cal.2d 478 [62 Cal. Rptr. 766, 432 P.2d 374]; People v. Cabral (1975) 51 Cal. App.3d 707 [124 Cal. Rptr. 418]; People v. Villagren (1980) 106 Cal. App.3d 720 [165 Cal. Rptr. 470]. The aforementioned cases are but a sample of the struggle courts and juries have had turning knives into "dirks or daggers" in order to protect citizens from those who carry death-dealing weapons. Indeed the Legislature has never dealt with the knife genre, but only with specifically designated weapons designed for stabbing, i.e., dirk, dagger, switch-blade. (In all fairness, the knife did get mentioned in 1974 with the passage of Pen. Code, § 626.10, which made it illegal to bring or possess any knife having a blade longer than three and one-half inches onto the grounds of or within any public school.) Page Supp. 9
(5) Subsequent to the decision in Bass, we were provided with a set of criteria for determining the question of preemption in In re Hubbard (1964) 62 Cal.2d 119, 128 [41 Cal. Rptr. 393, 396 P.2d 809]. The three criteria in Hubbard were as follows: "(1) [T]he subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality." (At p. 128.)
(4b) Applying the criteria set forth in Hubbard, it is clear that the subject matter, i.e., carrying and possession of knives, has not been fully and completely covered by general law so as to indicate that it is a matter exclusively of state concern. As to the second criteria, the subject matter of knives as a classification cannot even be considered partially covered by general law and there is nothing to indicate that regulation in the area of knives is of such paramount state concern that additional local action cannot be tolerated. The third criteria requires an analysis of whether the ordinances' prohibition on the carrying of knives and daggers in plain view would work such a hardship on transient citizens that it outweighs any benefit to the municipality. What is the hardship that the ordinance imposes upon a transient? It is that he cannot come into the county carrying knives or daggers in plain view unless he can demonstrate that those implements are essential to a recognized religious practice or are to be used in a lawful occupation or for the purpose of lawful recreation. This court finds no adverse effect on the transient citizen other than being required to justify the possession of the proscribed dangerous weapons. Certainly the benefit to the municipality far outweighs the inconvenience to the transient citizen.
Thus, this court finds that under the criteria delineated in In re Hubbard, supra, 62 Cal.2d 119, the subject of the open possession of knives has not been preempted by the Legislature.
In Yuen v. Municipal Court (1975) 52 Cal. App.3d 351 [125 Cal. Rptr. 87] a municipal ordinance made it an offense to loiter while carrying a concealed weapon. The court held that the local ordinance was not preempted by either the state law governing vagrancy or the state law governing the possession of knives. Although the court in Yuen did distinguish the ordinance it dealt with from the ordinance dealt with in Bass, it nevertheless did analyze the question of preemption and at page 356 it said: "We next examine whether the Legislature has pre-empted the control of knives and Page Supp. 10 knife-like objects as dangerous or deadly weapons." Its examination came up negative on the question of state preemption in the field of control of knives.
Under Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 456 [20 Cal. Rptr. 321, 369 P.2d 937], this court is not compelled by the rule of stare decisis to follow the holding in Bass, supra, 225 Cal. App.2d Supp. 777. Furthermore, it finds that footnote 5 in Galvan, supra, 70 Cal.2d at p. 862, is by no means a clear approval of the holding in Bass; if anything it is equivocal, and equivocal dictum at best.
The order of dismissal is reversed with directions to vacate the order sustaining defendant's demurrer and to substitute therefor an order overruling the demurrer.
Cooperman, P.J., concurred.
NOTES
[1] The following sections of the City of Commerce Municipal Code, drawn from ordinance No. 345, section 2 (1984), delineate its prohibition on carrying knives or daggers in plain view:

"9.16.051 Knives and daggers defined. As used in this chapter, the terms `knives and daggers' shall include any knife, dirk or dagger having a blade of three inches or more in length; any spring-blade, switch-blade or snap-blade knife; any locking-blade knife; any knife any blade of which is automatically released by a spring mechanism or other mechanical device; any ice pick or similar sharp stabbing tool; any straight-edge razor or any razor blade fitted to a handle.
"9.16.053 Carrying knives and daggers in plain view prohibited. It is unlawful for any person to carry on his person, in plain view, any knife or dagger.
"9.16.054 Exceptions to applicability. The provisions of Sections 9.16.051 through 9.16.053 shall not be deemed to prohibit the carrying of ordinary tools or equipment for use in a lawful occupation or for the purpose of lawful recreation, or where the carrying of a knife or dagger is a recognized religious practice."