Michael PORTA, Plaintiff,

v.

MAYOR, CITY OF OMAHA, NEBRASKA; and City of Omaha, Nebraska, Defendants.

Civ. No. 81–0–572.

United States District Court, D. Nebraska.

Aug. 29, 1984.

Stephen L. Pevar, American Civil Liberties Union, Denver, Colo., Lenore Andrea Simon, Omaha, Neb., for plaintiff.

James E. Fellows, Deputy City Atty., Omaha, Neb., for defendants.

## MEMORANDUM OPINION

RICHARD E. ROBINSON, Senior District Judge.

## INTRODUCTION

THIS ACTION stems from the arrest of Michael Porta for violation of the City of Omaha's loitering ordinance. The case is on remand from the United States Court of Appeals for the Eighth Circuit. The parties have filed cross motions for summary judgment asking this Court to determine whether the loitering ordinance passes constitutional muster in light of the Supreme Court's recent decision in *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

The constitutional issue was first considered by U.S. Magistrate Richard C. Peck. On March 24, 1983, before *Kolender* was decided, Magistrate Peck recommended to Judge Albert G. Schatz of this Court that the loitering ordinance be declared facially constitutional (Filing 54). Judge Schatz adopted this recommendation (Filing 58), and the plaintiff appealed.

The court of appeals, in a *per curiam* opinion, remanded the case with the following instructions:

First, plaintiff should be given leave to join the City of Omaha as a defendant; second, the individual defendants should be given leave to file motions for summary judgment based on their asserted defense of good-faith immunity; third, the court then should examine the posture of the case and determine whether a justiciable case or controversy exists; and fourth, if the court finds that a case or controversy exists, it should reevaluate the case in light of *Kolender*.

*Porta v. Boyle,* 726 F.2d 446, 447 (8th Cir.1984). The City of Omaha has been properly joined as a party defendant. (Filing 71). The parties have not, however, briefed or argued the second and third issues denominated by the court of appeals, but have chosen instead to submit the constitutional issue for a decision on the merits.

## DISCUSSION

The Omaha loitering ordinance was drafted almost verbatim from Section 250.6 of the American Law Institute's Model Penal Code (1962). It reads as follows:

Loitering, Prowling Section 20–171 Prohibited

It shall be unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity.

### Section 20–172

Among the circumstances which may be considered in determining whether alarm is warranted is the fact that the person takes flight upon appearance of a police officer, refuses to identify himself or endeavors to conceal himself or any object.

### Section 20–173

Same—Opportunity to dispel alarm.

Unless flight by the person or other circumstances makes it impracticable a police officer shall, prior to any arrest for an offense under this division, allow the person an opportunity to dispel any alarm which would otherwise be warranted by requesting him to identify himself and explain his presence and conduct.

### Section 20–174

Same—Requisites for conviction.

No person shall be convicted of an offense under this provision if the police officer did not comply with the preceding section, or, if it appears at trial that the explanation given by the person, if believed by the police officer at the time, would have dispelled the alarm.

Mr. Porta's principal assertion is that the ordinance is unconstitutionally vague and overbroad in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The plaintiff also contends that the ordinance violates his fourth amendment right of privacy because it vests police officers with indiscriminate enforcement power.

### A. *The Vagueness and Overbreadth Doctrines*

■ It is helpful at this point to review the legal principles that pertain in this area of constitutional adjudication. The Supreme Court views "vagueness and overbreadth as logically related and similar doctrines." *Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 1859 n. 8, 75 L.Ed.2d 903 (1983). The vagueness doctrine requires that penal statutes give notice to the ordinary person of what is prohibited and provide definite standards to guide the discretionary actions of police officers so as to prevent arbitrary and discriminatory law enforcement.[1] *Village of Hoffman Estates v. Flipside,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). *Garner v. White,* 726 F.2d 1274 (8th Cir.1984).

In *Kolender,* the Supreme Court emphasized that the prevention of arbitrary enforcement was the more important of the two elements of the vagueness doctrine.

---

1. These concerns were more thoroughly articulated in an earlier decision:

First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be

prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972).

The Court explained that a statute which lacks minimal enforcement guidelines may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Kolender, supra*, 103 S.Ct. at 1858–59 (*quoting Smith v. Goguen*, 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)).

▇▇▇ The overbreadth doctrine permits litigants to assert the first amendment rights of third parties not before the court. *Garner v. White, supra*, 726 F.2d at 1277. This somewhat anomolous principle is based on a "judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973). The overbreadth doctrine applies only to laws that affect a "substantial amount" of noncommercial speech, *Hoffman Estates, supra*, 455 U.S. at 494, 102 S.Ct. at 1191. It does not apply to "commercial speech because the profit motive is thought to be sufficiently compelling to enable such speech to withstand the chilling effect of an overbroad statute." *Garner v. White, supra*, 726 F.2d at 1277 (citation omitted).

## B. The *Kolender* Decision

*Kolender v. Lawson* was a bench-mark case for vagueness/overbreadth analysis. The *Kolender* majority rejected the dissenting justices' attempt to limit the application of the vagueness doctrine. The dissenters argued that a criminal statute is not subject to facial challenge "unless it is 'impermissibly vague in all of its applications.'" *Kolender, supra*, 103 S.Ct. at 1865 (White, Rehnquist, J.J., dissenting) (*quoting Hoffman Estates, supra*, 455 U.S. at 497, 102 S.Ct. at 1192). The Court held, however, that a statute which reaches "a substantial amount of constitutionally protected conduct," *Hoffman Estates, supra*,

455 U.S. at 494, 102 S.Ct. at 1191, could be declared facially invalid even if it "could conceivably [have] some valid application." *Kolender, supra*, 103 S.Ct. at 1859 n. 8 (citations omitted). The Court distinguished its decision in *Hoffman Estates* because the ordinance in that case regulated business activity and "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow." *Id.* (*quoting Hoffman Estates, supra*, 455 U.S. at 498, 102 S.Ct. at 1193). *Kolender* has thus arguably broadened the number of criminal statutes that may be subject to challenge on grounds of vagueness. *See Schwartzmiller v. Gardner*, 567 F.Supp. 1371, 1373 (D.Idaho 1983).

The California statute struck down in *Kolender*, and with which this Court is urged to compare the Omaha ordinance, declared that:

> Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor.... (e) who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer to do so, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification.

CAL. PENAL CODE 647(e). Section 647(e) had been interpreted by the California Court of Appeal to require "that an individual provide 'credible and reliable' identification when requested by a police officer who has reasonable suspicion of criminal activity sufficient to justify a *Terry [v. Ohio]* detention." [2] *Kolender, supra*, 103 S.Ct. at 1857–58. (footnote omitted). The statute permitted an arrest if the detained individual failed to satisfy this identification requirement. *Id.* at 1858.

In finding section 647(e) unconstitutional, the Supreme Court expressed concern over

---

**2.** The California court defined "credible and reliable" identification as identification "carrying reasonable assurance that the identification is authentic and providing means for later getting

in touch with the person who has identified himself." *People v. Solomon*, 33 Cal.App.3d 429, 438, 108 Cal.Rptr. 867 (1973).

the impact that such laws have upon both first amendment rights and the right to "freedom of movement." *Id.* at 1859. The Court found that the statute "vests virtually complete discretion in the hands of the police" to determine whether a suspect has provided "credible and reliable" identification. *Id.* The Court thus concluded that the statute was impermissibly vague because it effectively left lawmaking "to the moment-to-moment judgment of the policeman on his beat." *Id.* at 1860 (*quoting Gregory v. City of Chicago,* 394 U.S. 111, 120, 89 S.Ct. 946, 951, 22 L.Ed.2d 134 (1969) (Black, J., concurring)).

It is clear that the *Kolender* court was not merely concerned with the *detention* of individuals under section 647(e), for such actions could be independently justified under *Terry v. Ohio* and its progeny. Rather, the Court invalidated the statute because an individual was subject to *arrest* for failing to provide what the police officer, on the spur of the moment, deemed to be "credible and reliable" identification. The Court explained this important distinction in the following passage:

> In providing that a detention under 647(e) may occur only where there is a level of suspicion sufficient to justify a *Terry* stop, the State ensures the existence of 'neutral limitations on the conduct of individual officers.' *Brown v. Texas,* 443 U.S. 47, 51 [99 S.Ct. 2637, 2640, 61 L.Ed.2d 357] (1979). Although the initial detention is justified, the State fails to establish standards by which the officers may determine whether the suspect has complied with the subsequent identification requirement.

103 S.Ct. at 1860.

### C. *The Omaha Ordinance*

Loitering statutes patterned after the 1962 Model Penal Code have been upheld only when the operative language permitting a police officer's decision to detain a suspect is read to require " 'specific and articuable facts which, taken together with rational inferences from those facts, reasonably warrant' a finding that a breach of the peace is imminent or the public safety is threatened." *State v. Ecker,* 311 So.2d 104, 109 (Fla.), *cert. denied sub nom. Bell v. Florida,* 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975) (adopting language from *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)); *see also Bell v. State,* 252 Ga. 267, 313 S.E.2d 678, 681 (1984) (approving limiting construction of *State v. Ecker* ); *but see City of Bellevue v. Miller,* 85 Wash.2d 539, 536 P.2d 603, 607 (1975) (en banc) (finding Model Penal Code ordinance void for vagueness because "[a] determination of whether particular activity manifests an unlawful purpose or creates alarm is entirely dependent upon a police officer's opinion%y(4); *and City of Portland v. White,* 9 Or.App. 239, 495 P.2d 778, 779 (1972) (ordinance based on Model Penal Code declared unconstitutional because "[t]he terms 'loiter' and 'prowl' standing alone are so elastic that men of common intelligence must necessarily guess their meaning.")

■ It is axiomatic that when legislation is subject to differing interpretations, the court must favor a saving construction that renders the statute constitutional. *United States v. Voitch,* 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971). On the basis of the foregoing authorities, then, the Court is firmly convinced that section 20–171 of the Omaha loitering ordinance may be constitutionally enforced only under circumstances that would justify a *Terry v. Ohio* stop. Thus, a police officer who approaches and detains an individual under the ordinance "must be able to point to specific and articuable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion" on personal liberty. *Terry, supra.* The Court further finds that the words "under circumstances that warrant alarm for the safety of persons or property in the vicinity," Omaha Municipal Code 20–171, mean "those circumstances where peace and order are threatened or where the safety of persons or property is jeopardized." *State v. Ecker, supra,* 311 So.2d at 109;

*see also Bell v. State, supra,* 313 S.E.2d at 681.[3]

As the Court has already observed, the California loitering statute was invalidated in *Kolender* because of the vagueness of the "subsequent identification requirement" 103 S.Ct. at 1860. The Supreme Court explained that the ordinance "contains no standard for determining what a suspect has to do in order to satisfy the requirement to provide a 'credible and reliable' identification." *Id.* at 1859.

Under section 647(e), assuming that the detention standards of *Terry v. Ohio* were met, a suspect could be arrested simply because he or she failed to provide "credible and reliable" identification. In the view of this Court, the California Court of Appeal attempted to fashion a "narrowing" construction of the identification requirement, but instead succeeded only in heightening the risk of discriminatory enforcement. As the Ninth Circuit observed:

Under section 647(e) it could well be conceivable that a group might lawfully meet in support of an unpopular cause. One waiting outside for the meeting to commence could be required, at the unbridled discretion of an officer, to furnish identification at the peril of being arrested.

*Lawson v. Kolender,* 658 F.2d at 1362, 1369 (9th Cir.1981).

In an earlier case, the Second Circuit struck down a statute almost identical to section 647(e), and observed that

... the [statute] could lend itself to the abuse of pretextual arrest of people who are members of unpopular groups or who are merely suspected of engaging in other crimes, without sufficient probable cause to arrest for the underlying crime.

*United States ex rel. Newsome v. Malcolm,* 492 F.2d 1166, 1173 (2d Cir.1974), *aff'd sub. nom. Lefkowitz, Attorney General of New York v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975).[4]

In contrast to section 647(e), the Omaha ordinance establishes far greater protection against arbitrary law enforcement. First of all, section 20–172 sets forth three "circumstances" which a police officer may consider "in determining whether alarm is warranted." This section does not, however, represent an exhaustive list of factors that compel arrest. *See Bell v. State, supra,* 313 S.E.2d at 681. Rather, section 20–172 must be recognized as a legitimate legislative effort to impose necessary limitations on police discretion.

Furthermore, section 20–173 mandates that "a police officer shall, prior to any arrest for an offense under this division, allow the person an opportunity to dispel any alarm which would otherwise be warranted by requesting him to identify himself and explain his presence and conduct." The plaintiff of course maintains that this section evokes the greatest threat to fundamental constitutional rights. But the operative word in section 20–173 is "opportunity". Once a police officer has detained an individual in a manner consistent with *Terry v. Ohio,* as explained above, he must give the suspect a chance to identify himself; if the officer fails to do so, the individual may not be convicted under the ordinance. *See* Omaha Municipal Code 20–174. Although section 20–173 directs the officer to question the suspect about his identity and conduct, the suspect " 'is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest....' " *Kolender, supra,* 103 S.Ct. at 1862 (Brennan, J., concurring) (*quoting Terry v. Ohio,* 392 U.S. 1, 34, 88

---

**3.** On this point, the Supreme Court of Georgia distinguished *Kolender v. Lawson. See Bell v. State,* 252 Ga. 267, 313 S.E.2d 678, 681 n. 6 (1984).

**4.** The New York statute invalidated in *Newsome* stated that

A person is guilty of loitering when he: ... Loiters, remains or wanders in or about a

place without apparent reason and under circumstances which justify suspicion that he may be engaged or about to engage in crime, and, upon inquiry by a peace officer, refuses to identify himself or fails to give a reasonably credible account of his conduct and purposes.

492 F.2d at 1171.

S.Ct. 1868, 1886, 20 L.Ed.2d 889 (1968) (White, J., concurring)). The ordinance simply "does not permit an interrogation of the suspect for the purpose of gathering evidence to establish guilt." *Bell v. State, supra,* 313 S.E.2d at 682.

Finally, the ordinance shields an individual from arbitrary enforcement where an officer makes an arrest merely because he is not satisfied with the individual's section 20–173 explanation. Under section 20–174, there can be no conviction "if it appears at trial that the explanation given by the person, if believed by the police officer at the time," would have removed the officer's otherwise justifiable alarm for the safety of persons or property. The Court agrees with the conclusion of the Supreme Court of Georgia in *Bell v. State, supra,* that "unless the trier of fact determines, beyond a reasonable doubt, under all the circumstances of the case, that the explanation given would *not* have dispelled the officer's alarm or immediate concern, the accused must be acquitted." 313 S.E.2d at 682 (emphasis in original). That is the essence of due process: that a neutral and detached decision maker stand in judgment between accused and accuser.

In summary, the Court finds that a police officer may approach and detain an individual for loitering only under circumstances that would justify a *Terry* stop, and then only if the officer concludes that "peace and order are threatened or ... the safety of persons or property is jeopardized." *State v. Ecker, supra,* 311 So.2d at 109. The officer must then give the suspect "an opportunity to dispel any alarm" by identifying himself and explaining his presence and conduct.

■ The police officer may not, however, arrest the suspect merely because he refuses to answer the officer's inquiries. Nor may the officer make an arrest on the basis of suspicion alone. The arresting officer must have probable cause to believe that the suspect has violated section 20–171, as construed by this Court. Justice Brennan neatly summarized this central principle in his concurring opinion in *Kolender v. Lawson:*

> [U]nder the Fourth Amendment police officers with reasonable suspicion that an individual has committed or is about to commit a crime may detain that individual, using some force if necessary, for the purpose of asking investigative questions. They may ask their questions in a way calculated to obtain an answer. But they may not *compel* an answer, and they must allow the person to leave after a reasonably brief period of time unless the information they have acquired during the encounter has given them probable cause sufficient to justify an arrest.

103 S.Ct. at 1863 (footnotes omitted).

Finally, an individual may not suffer conviction if the trier of fact determines that the arresting officer should have believed the individual's proferred explanation.

■ The plaintiff raises one final point that merits discussion. Mr. Porta contends that the loitering ordinance violates fourth amendment privacy concerns. The Court disagrees; the ordinance is dissimilar to the "stop and identify" law invalidated in *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). It does not permit a law enforcement official to demand identification from an individual "without any specific basis for believing he is involved in criminal activity...." *Id.* at 52, 99 S.Ct. at 2641.

## CONCLUSION

The Court has painstakingly considered and reviewed the challenged ordinance, and has reached the conclusion that, subject to the interpretation advanced in this opinion, it is constitutional. More specifically, the Court has determined that sections 20–171 through 20–174 of the Omaha Municipal Code give fair notice to the ordinary person of what conduct is prohibited and establish sufficiently definite standards of guilt to prevent arbitrary and discriminatory law enforcement.

"Our Constitution is designed to maximize individual freedoms within a framework

**870**

of ordered liberty." *Kolender v. Lawson, supra,* 103 S.Ct. at 1858. Liberty is not a license, however, but requires a delicate balancing "between the public interest in effective law enforcement and the equally public interest in safeguarding individual freedom and privacy from arbitrary governmental interference...." *Id.* at 1863 (Brennan, J., concurring). Although the question is certainly a close one the Court concludes that, on balance, the Omaha loitering ordinance does not violate either the fourteenth amendment due process clause or the fourth amendment right of privacy.

A separate order of judgment will be issued contemporaneously with this opinion.