Sabrina FIELDS, Appellant,

v.

CITY OF OMAHA, Douglas County, Nebraska, A Municipal Corporation, & Vytautas Mackevicius, Appellees.

No. 86-1293.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1986.

Decided Feb. 9, 1987.

Before McMILLIAN and ARNOLD, Circuit Judges, and NICHOL,* District Judge.

McMILLIAN, Circuit Judge.

Sabrina Fields appeals from a final judgment entered in the District Court for the District of Nebraska upon a jury verdict in favor of the City of Omaha, Nebraska (the City), and her arresting officer, Vytautas Mackevicius (the officer). Fields brought this action for damages under 42 U.S.C. § 1983. She claimed the Omaha loitering and prowling ordinance, Omaha Municipal Code § 20–171 to –174 (the Omaha ordinance), under which she was arrested, is unconstitutional. The jury found for the City and Officer Mackevicius and the district court denied Fields' motion for judgment notwithstanding the verdict. This appeal followed.

For reversal, Fields argues that the Omaha loitering and prowling ordinance is unconstitutional on its face and as applied by Officer Mackevicius. For the reasons discussed below, we reverse and remand the case to the district court with instructions and for further proceedings.

The basic facts of Fields' arrest are not disputed. Fields moved to Omaha from New York on June 23, 1983. She was staying at the home of a friend, Paulett Chatmon. On the night of June 27, 1983, Fields and Chatmon walked to downtown Omaha from Chatmon's northside apartment. At about 10:30 p.m., they reached the well-lit area of Capitol Avenue near the intersection of Eighteenth Street, where they first encountered Officer Mackevicius. The officer was on routine traffic patrol. Capitol Avenue has four traffic lanes; a median in the middle of the street divides the four lanes.

There is conflicting testimony about what Fields and Chatmon were doing when they first encountered Officer Mackevicius. Fields testified that she and her friend were walking on the median of Capitol

Robert V. Broom, Omaha, Neb., for appellant.

Thomas O. Mumgaard, Omaha, Neb., for appellees.

* The Honorable Fred J. Nichol, United States Senior District Judge for the District of South Dakota, sitting by designation.

Avenue. Officer Mackevicius testified that the women were walking in the middle of Capitol Avenue. He said he called to them to get out of the street. A few moments later, he testified, he saw they were still in the street and he yelled to them to stop and come to him. At first, he said, they did not respond. After additional commands, Fields and Chatmon walked over to the police car. The officer asked the women to identify themselves and explain why they were walking in the street. Chatmon responded to the questions and identified herself. Fields offered only her name and refused to answer additional questions. Officer Mackevicius decided Fields' behavior violated the Omaha loitering and prowling ordinance and he arrested her. He did not arrest Chatmon because, as he testified, Chatmon had sufficiently identified herself.

Fields was booked for loitering and prowling. Because she was unable to make bail, she spent nine days in jail. Trial was held on September 13, 1983, and the loitering and prowling charge was dismissed. Fields brought suit against the City and Officer Mackevicius on June 26, 1984, claiming that her constitutional rights had been violated by her arrest and incarceration. She sought damages under 42 U.S.C. § 1983. The case was tried to a jury, which returned a verdict for the City and the officer.

On appeal, Fields argues first that the Omaha loitering and prowling ordinance is unconstitutional on its face. She contends the ordinance is vague and grants unlimited discretion to the police in violation of due process. The Omaha ordinance has been previously challenged on constitutional grounds. In *Porta v. Boyle*, 726 F.2d 446 (8th Cir.1984), this court reviewed an appeal from a district court judgment holding the ordinance constitutional. We did not, however, reach the merits of the constitutional claims in that case. Instead, we remanded the case to the district court for reconsideration in light of the United States Supreme Court's decision in *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (*Kolender*).

*Porta v. Boyle*, 726 F.2d at 447. On remand, the district court established narrowing guidelines it considered necessary and adequate in light of *Kolender* to make the ordinance constitutional. *Porta v. Mayor* 593 F.Supp. 863 (D.Neb.1984) (*Porta II*). There was no appeal of this decision.

The district court relied on *Porta II* in the present case and again upheld the constitutionality of the ordinance. *Fields v. City of Omaha*, No. 84-0-425, (D.Neb. Feb. 5, 1986). This appeal, then, is our first opportunity to evaluate the constitutionality of the Omaha ordinance in light of the *Kolender* decision.

A loitering statute was also at issue in *Kolender*. The challenged statute read, in relevant part:

Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor: ... (e) Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself [or herself] and to account for his [or her] presence when requested by any peace officer to do so, if the surrounding circumstances are such as to indicate to a reasonable [person] that the public safety demands such identification.

Cal. Penal Code § 647(e) (West 1970). In evaluating the constitutionality of § 647(e), the Supreme Court looked first to any previous and limiting construction of the statute. *Kolender*, 461 U.S. at 355, 103 S.Ct. at 1856. The California Court of Appeal had interpreted § 647(e) to permit a police officer to demand that an individual provide identification or to account for his or her presence only where the officer had the reasonable suspicion of criminal activity necessary to justify a *Terry* investigative stop. *Kolender*, 461 U.S. at 355–57, 103 S.Ct. at 1856–58, *citing People v. Solomon*, 33 Cal.App.3d 429, 108 Cal.Rptr. 867 (1973) (*Solomon*), *cert. denied*, 415 U.S. 951, 94 S.Ct. 1476, 39 L.Ed.2d 567 (1974). The state court had defined the identification required under the statute as "credible and reliable" identification, *i.e.*, identification

"carrying reasonable assurance that it is authentic and providing means for later getting in touch with the person who has identified himself [or herself]." *Solomon,* 33 Cal.App.3d at 438, 108 Cal.Rptr. at 873.

While this narrowing construction was found to save the "stop" aspect of the statute, the Supreme Court held that the "subsequent identification" aspect of the statute remained unconstitutionally vague. *Kolender,* 461 U.S. at 353, 103 S.Ct. at 1856. The void-for-vagueness doctrine, wrote the Court, requires that a penal statute define the criminal offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* at 357, 103 S.Ct. at 1858 (citation omitted). The Court determined that § 647(e) "contains no standard for determining what a suspect has to do in order to satisfy the requirement to provide ... identification," thereby "vest[ing] virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute." *Id.* at 358, 103 S.Ct. at 1858. Thus, the Court wrote, the California statute allowed an individual to walk the public streets "only at the whim" of any police officer who happens to stop that person and demand identification. *Id.* (citation omitted). Because the statute encouraged arbitrary law enforcement, the Court held that it violated the requirement that a legislature establish minimal guidelines to govern law enforcement. *Id.* at 357–58, 103 S.Ct. at 1858 (citation omitted).

In construing the Omaha ordinance[1] in light of *Kolender,* the district court in *Porta II* examined the "subsequent identification" provision. The Omaha ordinance requires that a police officer "prior to any arrest ..., allow the person an opportunity to dispel any alarm which would otherwise be warranted by requesting him to identify himself [or herself] and explain his [or her] presence and conduct." Omaha Municipal Code § 20–173. The *Porta II* court concluded that the Omaha ordinance, in contrast to the statute struck down in *Kolender,* "establishes far greater protection against arbitrary law enforcement" by means of this opportunity for identification and explanation. *Porta II,* 593 F.Supp. at 868.

We cannot distinguish the subsequent identification provision of the Omaha ordinance from the "identify himself [or herself] and ... account for his [or her] presence" clause of § 647(e), which the Supreme Court held did not specify with sufficient definiteness what is contemplated by the requirement of "identification." *Kolender,* 461 U.S. at 353–54, 103 S.Ct. at 1856. The Court acknowledged that the state court had defined the identification required as "credible and reliable identification," yet held that this narrowing interpretation failed to establish a standard adequate to protect against "moment-to-moment judgment [by] the policeman on his beat." *Kolender,* 461 U.S. at 360, 103

---

1. Omaha Municipal Code § 20–171 to –174 provides:

   *Sec. 20–171. Prohibited.*
   It shall be unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity.
   *Sec. 20–172. Circumstances to cause alarm.*
   Among the circumstances which may be considered in determining whether alarm is warranted is the fact that the person takes flight upon appearance of a police officer, refuses to identify himself [or herself] or endeavors to conceal himself [or herself] or any object.
   *Sec. 20–173. Same—Opportunity to dispel alarm.*

   Unless flight by the person or other circumstances makes it impracticable, a police officer shall, prior to any arrest for an offense under this division, allow the person an opportunity to dispel any alarm which would otherwise be warranted by requesting him [or her] to identify himself [or herself] and explain his [or her] presence and conduct.
   *Sec. 20–174. Same—Requisites for conviction.*
   No person shall be convicted of an offense under this division if the police officer did not comply with the preceding section, or if it appears at trial that the explanation given by the person, if believed by the police officer at the time, would have dispelled the alarm.

834

S.Ct. at 1860 (citations omitted). Similarly, we find that the Omaha loitering and prowling ordinance does not define acceptable identification, nor did the *Porta II* court clarify what is contemplated by "identification." Establishment of such minimal guidelines to govern law enforcement is the crux of the vagueness doctrine. *Kolender,* 461 U.S. at 358, 103 S.Ct. at 1858. The *Porta II* court held the Omaha loitering and prowling ordinance constitutional because a suspect is afforded an opportunity to identify and explain. But a mere opportunity to identify and explain, without a clarifying standard to guide the police officer's discretionary assessment of the account a suspect provides, does not prevent arbitrary and discriminatory law enforcement.

■ We conclude that neither the language of the ordinance, nor its interpretation in *Porta II,* defines "identification" or provides a standard by which a police officer can test the adequacy of any identification a suspect provides. The provision in the ordinance for an explanation of presence and conduct suffers from the same deficiencies. We hold, therefore, that the Omaha loitering and prowling ordinance is unconstitutionally vague on its face, in violation of due process.[2] The City is liable to Fields under § 1983 for compensatory damages. The case is remanded to the district court for entry of declaratory relief that Omaha Municipal Code § 20–171 to –174 is unconstitutional and for determination of damages on this claim.

■ We next address Fields' claim that the actions of Officer Mackevicius in applying the ordinance violated her civil rights. Employees of municipalities may be liable under § 1983. *Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A government official may, however, raise the affirmative defense of qualified immunity against liability for civil damages in a § 1983 suit. *Harlow v. Fitzgerald,* 457

U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (*Harlow*). Qualified immunity is available to an official performing discretionary functions, but only "insofar as [his or her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. The test, therefore, is "the objective legal reasonableness of an official's acts." *Id.* at 819, 102 S.Ct. 2739. This question is one of law. *Bell v. Sellevold,* 713 F.2d 1396, 1402 (8th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 978, 79 L.Ed.2d 215 (1984).

Officer Mackevicius can claim qualified immunity in the present case if his actions did not violate clearly established constitutional rights of which he should have known. The law pertinent to a qualified immunity determination is the law applicable at the time the challenged conduct occurred. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

■ Fields was arrested on the evening of June 27, 1983. The *Kolender* decision was issued May 2, 1983. *Porta II* held the Omaha ordinance constitutional in light of *Kolender* on August 29, 1984. Thus, on the date Officer Mackevicius arrested Fields, no doubts had surfaced regarding the constitutionality of the Omaha loitering and prowling ordinance. The Supreme Court has refused to require a police officer "to anticipate that a court would later hold [an] ordinance unconstitutional." *Michigan v. DeFillippo,* 443 U.S. 31, 38, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979). When no controlling precedent holds an ordinance unconstitutional at the time it is applied, the ordinance is presumptively valid. *Id.* at 37, 99 S.Ct. at 2632. We therefore accord presumptive constitutionality to the Omaha ordinance as of June 1983 for the limited purpose of determining Officer Mackevicius' liability for enforcing the ordinance.

2. Because we hold the ordinance void for vagueness on due process grounds, we do not reach Fields' contention that the ordinance also vio-

lates the fourth amendment. *But cf. Kolender,* 461 U.S. at 362–69, 103 S.Ct. at 1860–64 (Brennan, J., concurring).

When making a qualified immunity determination, however, we look to all constitutional and statutory law in existence at the time the challenged action occurred. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. On June 27, 1983, when Officer Mackevicius stopped and detained Fields, the Supreme Court had clearly established the necessary conditions for a police officer's investigative stop. A police officer may stop and briefly detain an individual whose behavior reasonably causes suspicion of criminal activity. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (*Terry*). The officer's "reasonable suspicion" must be based on objective, articulable facts and reasonable inferences drawn from all the circumstances surrounding the suspect's behavior. *Id.* at 27, 88 S.Ct. at 1883; *id.* at 31, 88 S.Ct. at 1885 (Harlan, J., concurring).

The Supreme Court applied the *Terry* standard when considering a challenge to an ordinance that required a person lawfully stopped by a police officer to provide identification. *Brown v. Texas,* 443 U.S. 47, 50–51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979). The Court reiterated in that case that the Constitution requires a reasonable suspicion whenever a police officer stops and detains someone. "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person ... and the Fourth Amendment requires that the seizure be reasonable." *Id.* at 50, 99 S.Ct. at 2640 (citations omitted).

Officer Mackevicius testified that he observed Fields walking with a companion in the middle of the street at 10:30 p.m. The parties agree that on that day and at that time there was no traffic on Capitol Avenue. Walking in the middle of a street does not, without more, provide an articulable fact from which a police officer would reasonably suspect criminal behavior. Walking in the middle of a street, even at night, is not a crime, nor does it lead a

reasonable person to conclude that criminal behavior will soon occur. The City and the officer cite no authority to the contrary. Officer Mackevicius acknowledged, in fact, that nothing about Fields' conduct on the night of her arrest could be described as either "loitering" or "prowling" as these words are commonly defined. Thus, under the clearly established constitutional rule of *Terry,* Officer Mackevicius lacked the reasonable suspicion necessary to initially stop and detain Fields. The officer may not, therefore, claim qualified immunity in this case because he failed to follow clearly established constitutional law of which he should have known. Officer Mackevicius is liable to Fields for compensatory damages under § 1983 for unconstitutional application of the Omaha ordinance. The case is remanded to the district court for determination of compensatory damages on this claim.

We must finally consider whether Officer Mackevicius may be found liable to Fields for punitive damages. Punitive damages are available against an individual defendant in a § 1983 action.[3] *Smith v. Wade,* 461 U.S. 30, 35–36, 103 S.Ct. 1625, 1629, 75 L.Ed.2d 632 (1983). The standard is whether the defendant acted with "reckless or callous disregard of" the plaintiff's rights; actual malicious intent is not required. *Id.* at 37, 51, 103 S.Ct. at 1630, 1637.

The issue of whether Officer Mackevicius acted in "reckless or callous disregard of" Fields' constitutional rights was not submitted to the jury in this case. Based on our holding that the officer violated Fields' constitutional rights, as well as the factual circumstances of Fields' detention and arrest, we conclude this is a submissible issue. We therefore remand Fields' claim for punitive damages to the district court for retrial of the limited issue of whether the officer is liable to Fields for exemplary damages, and, if so, in what amount.

---

**3.** The City may not be held liable for punitive damages. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981) (a municipality is immune from punitive damages under § 1983).

In summary, we hold that the Omaha loitering and prowling ordinance is unconstitutional on its face. We further hold, based on undisputed testimony, that Officer Mackevicius unconstitutionally applied the ordinance to Fields when he stopped and detained her without the requisite reasonable suspicion. We have also determined as a matter of law that the officer may not claim qualified immunity in this case. Both the City and the officer are liable to Fields for compensatory damages under § 1983, and the officer may also be liable for punitive damages.

Accordingly, the judgment of the district court is reversed and the case is remanded to the district court for (1) entry of declaratory relief that Omaha Municipal Code § 20–170 to –174 is unconstitutionally vague, in violation of due process, (2) further proceedings to determine the amount of compensatory damages for which the City and Officer Mackevicius are liable to Fields, and (3) further proceedings to determine whether Officer Mackevicius is liable to Fields for punitive damages, and, if so, in what amount.

It is so ordered.