REQUESTED BY: Senator Kate Witek
You have requested an official Attorney General's Opinion concerning whether failure of a State Senator to support a proposed resolution concerning a term limits amendment would violate a Senator's duty to support the Nebraska Constitution. Specifically, you have asked "Under what circumstances would a State Senator's failure to support LR 1 . . . constitute a violation of a State Senator's oath of office to support the Constitution of the State of Nebraska?" You note in your opinion request that,
 Legislative Resolution 1 was introduced by Senator Withem in relation to the passage of Initiative 409 in the general election of 1996, now codified as Article XVIII of the Constitution of the State of Nebraska. LR 1 was advanced to General File by the Executive Board on March 3, 1997. The Resolution was not debated during the 1997 Legislative Session nor was it placed on the agenda by the Speaker of the Legislature. It is possible that this Resolution will be voted upon during the 1998 Legislative Session. It has been suggested that, among other things, a vote against LR 1 would constitute a violation of the oath of office taken by members of the Legislature under Article XV, Section 1, of the Constitution of the State of Nebraska, wherein it is required that members swear or affirm that they will support the Constitution of the State of Nebraska.
 Discussion
In considering the question presented, one must first review the applicable provisions of the Nebraska Constitution and the proposed Legislative Resolution:
Neb. Const. art. XV, § 1 provides:
 Executive and judicial officers and members of the legislature, before they enter upon their official duties shall take and subscribe the following oath, or affirmation. "I do solemnly swear (or affirm) that I will support the constitution of the United States, and the constitution of the State of Nebraska, and will faithfully discharge the duties of . . . according to the best of my ability, and that at the election at which I was chosen to fill said office, I have not improperly influenced in any way the vote of any elector, and have not accepted, nor will I accept or receive, directly or indirectly, any money or other valuable thing from any corporation, company or person, or any promise of office, for any official act or influence (for any vote I may give or withhold on any bill, resolution, or appropriation)." Any such officer or member of the legislature who shall refuse to take the oath herein prescribed, shall forfeit his office, and any person who shall be convicted of having sworn falsely to, or of violating his said oath shall forfeit his office, and thereafter be disqualified from holding any office of profit or trust in this state unless he shall have been restored to civil rights.
(Emphasis added).
Neb. Const. art. XVIII, § 4(1) provides: "We the Voters of the State of Nebraska hereby instruct each member of the Legislature to use all of his or her delegated powers to pass an application . . . as set forth in section (2) of this section. . . ."
Neb. Const. art. XVIII, § 4(3) provides:
 All primary and general election ballots shall have the information "DISREGARDED VOTERS INSTRUCTION ON TERM LIMITS" printed adjacent to the name of any respective member of the Legislature who:
 (a) Fails to vote in favor of the application set forth in subsection (2) of this section when brought to a vote;
 (b) Fails to second the application if it lacks for a second;
 (c) Fails to vote in favor of all votes bringing the application before any committee or subcommittee upon which he or she serves;
 (d) Fails to propose or otherwise bring to a vote of the full legislative body the application if it otherwise lacks a legislator who so proposes or brings to a vote of the full legislative body the application;
 (e) Fails to vote against any attempt to delay, table, or otherwise prevent a vote by the full legislative body on the application;
 (f) Fails in any way to ensure that all votes on the application are recorded and made available to the public;
 (g) Fails to vote against any change, addition, or modification to the application;
 (h) Fails to vote in favor of the congressional term limits amendment if it is sent to the states for ratification; or
 (i) Fails to vote against any term limits amendment with longer terms if such amendment is sent to the states for ratification.
 LR 1 (95th Legislature, 1st Session) provides:
 To implement initiative measure 409 approved by the voters of Nebraska in November 1996, we, the people, and the Legislature, due to our desire to establish term limits on Congress, hereby make application to Congress, pursuant to our power under Article V of the United States Constitution, to call a convention for proposing amendments to the United States Constitution.
The question, then, is whether the failure of a State Senator to support LR 1 would violate his or her oath to support the Nebraska Constitution, since LR 1 contains the application referenced in Article XVIII, which legislators are "instructed" to support.
One of the keys to this question is the meaning of the phrase "the Voters . . . hereby instruct . . ." in Article XVIII. Does this phrase mean that Senators are constitutionally mandated to vote for LR 1, or does it mean that the voters have given a nonbinding instruction expressing the people's collective desire that Senators should vote for the proposed term limit provision? The word "instruct" is not defined in Article XVIII, and it is not clear whether the "instruction" is to be advisory or mandatory. Nebraska case law does not provide any precedent on this question. Thus, one must consider the alternative interpretations and determine which is most appropriate under Nebraska law.
Under Nebraska law, it is a cardinal rule of construction that where two differing interpretations are possible, a court must favor a saving construction that renders the provision constitutional. Callan v. Balka, 248 Neb. 469, 481,536 N.W.2d 47 (1995); State ex rel. Bouc v. School Dist. of City ofLincoln, 211 Neb. 731, 739, 320 N.W.2d 472 (1982); School Dist.No. 54 v. School Dist. of Omaha, 171 Neb. 769, 774,107 N.W.2d 744 (1961) ("the validity of a statute is favored and when susceptible of two constructions the one holding such statute valid will ordinarily be followed."). See also Porta v. Mayor,City of Omaha, 593 F. Supp. 863, 867 (D.Neb. 1984). Similarly, under Nebraska law, "a statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of constitutionality." State ex rel. Shepherd v. Neb. Equal Opp.Comm., 251 Neb. 517, 520, 557 N.W.2d 684 (1997) (emphasis added).
This rule favoring a saving construction is so strong that, "even when a law may be constitutionally suspect, a court willattempt to interpret it in a manner consistent with theConstitution." Id. (emphasis added); Findaya W. v.A-T.E.A.M. Co., 249 Neb. 838, 841, 546 N.W.2d 61 (1996);Centra, Inc. v. Chandler v. Ins. Co., 248 Neb. 844, 859,540 N.W.2d 318 (1995); State ex rel. Grape v. Zach, 247 Neb. 29,42, 524 N.W.2d 788 (1994); Bamford v. Upper Republican Nat.Resources Dist., 245 Neb. 299, 307, 512 N.W.2d 642 (1994) (quoting Kwik Shop v. City of Lincoln, 243 Neb. 178, 182-183,498 N.W.2d 102, 106 (1993)).
Under these rules of construction, a reviewing court should ascertain whether a construction of Article XVIII is fairly possible by which its constitutionality may be upheld. Johnsonv. Robison, 415 U.S. 361, 366-367, 94 S.Ct. 1160 (1974). If a law is susceptible of a reasonable interpretation which supports its constitutionality, the court must accord the law that meaning. United States v. National Dairy Prod. Corp.,372 U.S. 29, 32, 83 S.Ct. 594, 597 (1963); In Re Applications A-16027 etal., 242 Neb. 315, 327, 495 N.W.2d 23 (1993).
Article XVIII specifically contemplates that some legislators will oppose the proposed amendment, and expressly provides for informing the voters of this occurrence. See Neb. Const. art. XVIII, § 4. Furthermore, there is no express language in the Nebraska Constitution which states that legislators who oppose the proposed amendment violate their oath of office. The only consequence provided is to have a legislator's position disclosed to voters. The provisions in Article XVIII providing for such disclosure are specific and would control over more general provisions elsewhere even if otherwise applicable. Consequently, it is illogical to interpret Article XVIII as mandating support for LR 1. Furthermore, if failure to support the amendment was grounds for removal from office, it would be unnecessary to provide a mechanism to inform the electorate of legislators' voting records. Thus, it is illogical to interpret Article XVIII as mandating support for LR 1 upon threat of forfeiture of office.
Furthermore, it is possible that a provision which mandated
State Senators to vote a particular way on a particular issue or piece of legislation would be found unconstitutional under theFirst Amendment. See Bond v. Floyd, 385 U.S. 116 (1966) ("the oath gives [the State] no interest in limiting its legislators' capacity to discuss their views on local or national policy."). However, a nonbinding statement expressing the will of the people as to how legislators should vote on an amendment is perfectly valid. Kimble v. Swackhamer, 439 U.S. 1385, 1386 (1978) (Rehnquist, Circuit Justice).
Thus, since two interpretations of Article XVIII are possible, choosing the interpretation which construes the provision as mandating support for LR 1 would violate cardinal rules of construction. As discussed previously, it is a cardinal rule of construction that where two differing interpretations are possible, a court must favor a saving construction that renders the provision constitutional. Porta v. Mayor, City of Omaha,593 F. Supp. 863, 867 (D.Neb. 1984). See also State v.Edmunds, 211 Neb. 380, 386, 318 N.W.2d 859 (1982) ("If possible, a statute should be construed in such a way as to negate any constitutional infirmity.").
Further validating this saving construction of the provisions in question is the fact that Article XVIII is a constitutional amendment approved by an overwhelming majority of Nebraska voters. The Nebraska Supreme Court has stated that in such cases the presumption in favor of validity and of a saving construction are particularly strong. Parker v. Roth, 202 Neb. 850, 861,278 N.W.2d 106 (1979) ("it is incumbent on this court, when reasonably possible and consistent with constitutional rights, to resolve all doubts as to a statute in favor of its constitutional validity. If possible, a statute should be construed in such away as to negate any constitutional infirmity [citation omitted]. If such rule properly applies to a statute adopted bythe Legislature, all the more should it apply to an amendment tothe Constitution approved by an overwhelming majority of thepeople." (emphasis added); Anderson v. Tiemann, 182 Neb. 393,397, 155 N.W.2d 322 (1967), ("Constitutional provisions shouldreceive even broader and more liberal construction thanstatutes, and constitutions are not subject to rules of strict construction. . . . `Where a statute is susceptible of twoconstructions, one of which renders it constitutional and theother unconstitutional, it is the duty of the court to adopt theconstruction which, without doing violence to the fair meaning ofthe statute, will render it valid'.") (quoting State ex rel.Meyer v. Lancaster County, 173 Neb. 195, 113 N.W.2d 63 (1962)) (emphasis added).
Therefore, Nebraska State Senators who fail to support LR 1 in the next legislative session do not violate their oath of office, and thus would not forfeit their offices.
Sincerely,
 Don Stenberg Attorney General